UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TY WAYNE BIRCHFIELD,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil Case:    1:21-cv-00079-BLW<br>Criminal Case: 1:19-cr-00108-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Petitioner Ty Wayne Birchfield's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Civ. Dkt. 1, Crim Dkt. 44). Birchfield claims, among other things, that he received ineffective assistance of counsel on the grounds that (1) his attorney wrongly convinced him not to pursue a direct appeal; (2) his attorney misrepresented what would happen in his sentencing proceeding; and (3) his attorney did not involve him in important conversations between the attorney, the Government, and the Court. The Court has determined that the evidence in the record is sufficient for a decision on this matter and that an evidentiary hearing is not necessary. For the reasons explained below, the Court will deny the motion. The Court also declines to issue a certificate of appealability.

## BACKGROUND

Birchfield was indicted in April 2019 on one count of distributing methamphetamine, one count of possession with intent to distribute methamphetamine, and possession of firearms in furtherance of a drug trafficking crime. (Crim. Dkt. 1.) In October 2019, he pled guilty, pursuant to a plea agreement, to possession with intent to distribute methamphetamine and possession of firearms in furtherance of a drug trafficking crime. (Crim. Dkts. 17, 20, 21, 23.) The plea agreement contained the following waiver of appeal and post conviction rights:

A. <u>Waiver:</u> In exchange for this agreement, and except as provided in subparagraph B, the Defendant waives any right to appeal or collaterally attack the entry of plea, the conviction, the entry of judgment, and the sentence, including forfeiture and restitution. This waiver includes any challenge to the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction.

   The Defendant acknowledges that this waiver will result in the dismissal of any direct appeal or collateral attack the Defendant might file seeking to challenge the plea, conviction or sentence in this case. Further, the filing of such an appeal or collateral attack will breach this agreement and allow the Government to withdraw from it, as well as to take other remedial action.

   If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived.

[B.] <u>Exceptions:</u>

1. Direct Appeal: Notwithstanding subparagraph A, the Defendant may file one direct appeal if one of the following unusual circumstances occurs:

a. the sentence imposed by the Court exceeds the statutory maximum;

b. the Court arrived at an advisory USSG range by applying an upward departure under chapter 5K of the USSG; or

c. the Court exercised its discretion under 18 U.S.C. § 3553(a) to impose a sentence that exceeds the advisory USSG range as determined by the Court.

The Defendant understands that the above circumstances occur rarely and that in most cases this agreement completely waives all appellate rights.

2. Motion Under 28 U.S.C. § 2255: Notwithstanding subparagraph A, the Defendant may file an ineffective assistance of counsel claim in a 28 U.S.C. § 2255 motion.

(Crim. Dkt. 17 at 11-12.)

Birchfield was sentenced on February 12, 2020, to the mandatory minimum sentence of 180 months of imprisonment, with 120 months mandatory minimum for the possession with intent to distribute count and 60 months consecutive mandatory minimum for the gun possession count. (Crim. Dkt. 35.) He was also sentenced to 5 years of supervised release, a $200 special assessment, and a $1,500 fine. (*Id.*)

Defendant timely filed the currently pending Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, claiming, among other things, ineffective assistance of counsel. (Civ. Dkt. 1, Crim Dkt. 44).

## STANDARD FOR § 2255 MOTIONS

Under 28 U.S.C. § 2255, there are four grounds on which a court may grant relief to a federal prisoner who challenges the imposition or length of his or her custody: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). Birchfield challenges his sentence under the first ground for relief, arguing that the sentence was imposed in violation of the Constitution.

A hearing on a § 2255 motion is not required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

## ANALYSIS

### A.    Ineffective Assistance of Counsel Claims

Birchfield claims that he received ineffective assistance of counsel because (1) his attorney wrongly convinced him not to pursue a direct appeal; (2) his attorney misrepresented what would happen in his sentencing proceeding; and

(3) his attorney did not involve him in important conversations between his attorney, the Government, and the Court.

### 1. Legal Standard

To establish ineffective assistance of counsel, Birchfield must meet the two-part *Strickland* test, which requires that he show both (1) that his "counsel's representation fell below an objective standard of reasonableness," and (2) that there is a "reasonable probability" that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Conclusory allegations are insufficient to state a claim of ineffective counsel. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989).

When evaluating the sufficiency of counsel's representation, a court's review is "highly deferential," and there is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 688, 689. This is because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

To establish prejudice, a defendant must affirmatively prove by a reasonable degree of probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. *Id.* at 694. This *Strickland* standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986).

If either element of the two-part *Strickland* test is missing, then a defendant has not met his or her burden. When assessing an ineffective assistance claim, there is no need to assess the elements of the *Strickland* test in a particular order, or to even address both elements of the test. *Strickland*, 466 U.S. at 697.

With these standards in mind, the Court turns to Birchfield's claims that his counsel was ineffective.

### 2. Claim that counsel wrongly convinced Birchfield not to pursue a direct appeal.

Birchfield claims that his attorney wrongly convinced him not to pursue a direct appeal challenging the Government's failure to honor the plea agreement and his conviction under § 924(c), which Birchfield contends is unlawful. Birchfield contends that the plea agreement did not preclude him from filing a direct appeal and that, but for his attorney's advice, he would have filed an appeal. He contends that, after sentencing, his counsel advised him not to file a direct appeal because the Government was going to use Birchfield in another case, and that if Birchfield challenged the Government on failing to "honor their commitment regarding my original cooperation it would ruin my opportunity for a 5K1.1 credit in the other case where they wanted to use my testimony." (Dkt 1 at

4.)

When a defendant has informed his counsel that that he or she wishes to pursue an appeal, and counsel, having been so informed, fails to file an appeal, counsel has rendered ineffective assistance. *Manning v. Foster*, 224 F.3d 1129, 1135 (9th Cir. 2000) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 483 (2000). Further, if the defendant "can prove that he would have appealed 'but for' counsel's failure to file, prejudice is presumed." *Id.* at 1136.

Here, Birchfield does not claim that he told his counsel to file an appeal. Rather, Birchfield claims that his counsel convinced him not to pursue a direct appeal. This claim is consistent with the affidavit of his counsel, which states:

> That I do recall that Petitioner was sentenced on February 12, 2020, and after the sentencing Petitioner verbally advised me in a phone conversation, he was agreeable to foregoing a direct appeal. Therefore, I did not file a notice of direct appeal regarding Petitioner's sentencing . . . .
>
> That this phone conversation with Petitioner occurred after the sentencing but prior to the elapse of the fourteen (14) day deadline in which to file a notice of appeal.
>
> That I do not recall that discussion verbatim however, generally, Petitioner and I discussed his decision to appeal in the context of his desire for post-sentencing cooperation consideration, his pre-indictment failed CHS attempt and its level of relevance to a direct appeal as well as the odds of a direct appeal succeeding given the sentence he received.
>
> That based on the sentence the court handed down, I advised

Petitioner that in my opinion, none of the exceptions in his plea agreement (a-c) existed for filing a direct appeal and therefore filing a direct appeal would likely fail and could result in the Government withdrawing from the plea agreement as outlined in the plea agreement to which he agreed.

(Dkt. 10-1 at 4.)

Defense counsel's affidavit thus confirms Birchfield's admission in his motion that his counsel advised him not to appeal and that Birchfield agreed to forego a direct appeal. Moreover, Birchfield has not overcome the "strong presumption" that his counsel's advice "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Birchfield has failed to demonstrate that his counsel's advice to not pursue a direct appeal constitutes ineffective assistance of counsel.

### 3. Claim that counsel misrepresented what would happen in the sentencing proceeding.

Birchfield claims that his attorney misrepresented to him what would happen during the sentencing proceedings and that this misrepresentation gave Birchfield "false hope that [his] cooperation with the government would provide a better sentencing outcome than [he] would get" had he taken his case to trial. He contends that he would not have signed a plea agreement but for these assurances and that these assurances included that he (a) would be sentenced by Judge Nye, who his counsel said was known for giving below-mandatory-minimum sentences;

and (b) that the best chance for leniency was for Birchfield to sign the plea agreement and "hope for the best case scenario." Birchfield contends that these were misrepresentations because he was not sentenced by Judge Nye and his counsel did not have a way to know what judge would sentence him, and that his counsel should not have "painted a picture of how the sentencing would proceed to a defendant who was a first time offender, had never been in federal court before and had no idea about the fluidity of sentencing proceedings." (Dkt 1 at 4.)

In his affidavit, Defense counsel explains that, at one point, he mistakenly advised Birchfield that Judge Nye was the district judge on the case that would be sentencing him, but that a magistrate judge would be taking his plea. (Dkt. 10-1 at 7.) However, defense counsel also explains that this letter was drafted and sent to Birchfield prior to the change of plea hearing; that, after he sent that letter and prior to the change of plea hearing, he advised Birchfield of the error in identifying his sentencing judge; and that he informed Birchfield, prior to the plea hearing that, in fact, Judge Winmill rather than Judge Nye would be the sentencing judge. (*Id.*)

Counsel further explains that he advised Birchfield that the district judges for the District of Idaho "do consistently disagree with purity versus mixture guideline disparity for methamphetamine so he would possibly receive a below guideline sentence based on that disparity." (*Id.*) Counsel does not, however, recall

ever advising Birchfield that Judge Nye was known for giving below mandatory sentences, or making assurances that Birchfield would receive a below mandatory sentence. (*Id.*)

Based on the information before the Court, it is clear that although Birchfield was mistakenly told at one point that Judge Nye would be the sentencing judge, that error was corrected and Birchfield was informed that the undersigned, Judge Winmill, would be the sentencing judge and that this corrected information was provided to Birchfield prior to his entry of a plea.

Birchfield has failed to demonstrate that his counsel's performance was deficient when his counsel mistakenly told him that Judge Nye would be the judge for sentencing, but corrected that error prior to Birchfield's entry of a plea.

### 4.  Claim that counsel did not involve Birchfield in important conversations between his counsel, the Government, and the Court.

Birchfield claims that his counsel failed to involve him in important conversations between his counsel, the Government, and the Court. During the first sentencing hearing, the Court stopped the sentencing hearing and Birchfield's counsel and Government counsel accompanied the undersigned into chambers to an off-the-record conference, after which the sentencing hearing was continued to a later date. Birchfield contends that, after the off-the-record conference, his counsel told him that the sentencing hearing was being rescheduled because the

Government was going to offer Birchfield a "better deal." Birchfield explains that

he has no idea what transpired during the in-chambers off-the-record conference.

Birchfield goes on to explain that, prior to the continued sentencing hearing,

he was in a holding cell waiting for the hearing to begin and, during that time,

> a known associate was put in the cell with me. We started talking
> about a mutual friend who we both knew was a FBI informant.
> Specifically, we talked about all of the people on whom she had
> informed. Almost immediately after we finished talking, he [the
> known associate] was taken from the cell. Approximately two hours
> later, I was taken into court for my hearing where I thought I was
> going to be presented with a new plea agreement. Instead, the Court
> called the session into order and almost immediately said he, my
> attorney and the government were going into his chambers. When
> they came out the proceedings continued with the government saying
> they had nothing further to offer . . . [T]he judge talked to me for
> approximately 20 minutes. In that speech he told me I had threatened
> someone "in the building" and that meant he had to give me the
> mandatory minimum sentence of 180 months with no credit for the
> assistance I gave to the government.

(Dkt. 1 at 5-6.) Birchfield states that he does not know what the judge was

talking about or who Birchfield was supposed to have threatened, and

further that his attorney did not ever discuss with Birchfield what happened

during the in-chambers conference. (Dkt. 1 at 4-5.)

Defense counsel explains that during the in-chambers off-the-record

conference held during the initial sentencing hearing, defense counsel,

Government counsel, and the Court agreed that sentencing would be

continued to allow time for a further debrief of Birchfield with law

enforcement and/or a further attempt at cooperation between Birchfield and

the Government. (Dkt. 10-1 at 6.) Defense counsel goes on to explain that he

advised Birchfield of this and explained to Birchfield that this would give

him a better opportunity to secure cooperation consideration under the plea

agreement either at sentencing or post-sentencing. (*Id.*) Counsel does not

ever recall advising Birchfield that there would be a "new plea agreement."

(*Id.*) Finally, counsel explains that he and Birchfield met with an ATF agent

on the day of the continued sentencing hearing because that was the day the

ATF agent was available for the meeting. (*Id.*)

Birchfield has failed to demonstrate that his counsel's performance

was deficient, or that Birchfield was prejudiced, by his counsel attending the

in-chambers, off-the-record meetings with the Court and Government

counsel. Nor has Birchfield demonstrated how his counsel's performance

was deficient, or that Birchfield was prejudiced, by his counsel participating

in discussions that occurred during those meetings, including the discussion

to continue sentencing to give Birchfield the opportunity to further debrief

with law enforcement and perhaps provide cooperation to the Government.

**B.    Additional Claims**

If a defendant expressly waives his rights to appeal or collaterally attack his

sentence, the district court lacks jurisdiction to consider his § 2255 motion. *United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999) ("It would overreach our jurisdiction to entertain an appeal when the plea agreement effectively deprived us of jurisdiction."). However, a plea agreement that waives a defendant's right to collaterally attack his sentence is not enforceable if the waiver was involuntary. *See, e.g., Washington v. Lampert*, 422 F.3d 864-870-71 (9th Cir. 2005).

Birchfield entered into a plea agreement in which he waived his right to collaterally attack "the entry of plea, the conviction, the entry of judgment, and the sentence," including the right to challenge "the constitutionality of any statute of conviction including arguments that the admitted conduct does not fall within any statute of conviction." (Dkt. 17 at 11-12.) The plea agreement further provides that the waiver "will result in the dismissal of any . . . collateral attack the Defendant might file seeking the challenge the plea, conviction or sentence in this case." (*Id.* at 12.) The only exception to this waiver of collateral attack is for claims of ineffective assistance of counsel. (*Id.* at 12.)

Birchfield has not demonstrated that his waiver of his right to collaterally attack his entry of plea, conviction, and sentence was involuntary. Accordingly, the Court will dismiss Birchfield's additional claims, including his claim that the Government breached the plea agreement by not making a motion for downward

adjustment under U.S.S.G. § 5K1.1; and that he did not violate the law because he did not "actively employ a firearm" in furtherance of a drug crime or any other crime.

Birchfield also claims that the plea agreement was involuntary and the result of coercion because it was based on the "government's threats of how they would prosecute me if I did not work with them and, conversely, their commitments to me if I did." However, it is well established that the Government's threat of further or harsher prosecution does not render a plea, or a plea agreement, involuntary. *See Bordenkircher v. Hayes*, 434 U.S. 357, 360-63 (1978) (plea knowing and voluntary despite prosecutor's threat to indict on further charges if defendant did not plead guilty). Further, during the plea hearing, the magistrate judge went over the terms of the plea agreement, and Birchfield acknowledged that he understood the terms of the plea agreement. On this record, it cannot be said that Birchfield's entry into the plea agreement was anything but knowing and voluntary.

Finally, to the extent that Birchfield claims his entry into the plea agreement was involuntary because of post-plea conduct by the Government, such claim lacks merit and does not demonstrate that Birchfield's entry into the plea agreement was

not voluntary.[1]

## C.     Certificate of Appealability

A § 2255 movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a movant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, the movant must show that reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the court has denied a § 2255 motion or claims within the motion on the merits, the movant must show that reasonable jurists would find the court's decision on the merits to be debatable or wrong. *Id.*; *Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006). After carefully considering the record and the relevant case law, the Court finds that reasonable jurists would not find the Court's

---

[1] The plea agreement provides that "If the Defendant believes the Government has not fulfilled its obligations under this agreement, the Defendant will object at the time of sentencing; further objections are waived." (Dkt. 17 at 12.) Birchfield did not raise such an objection at the sentencing hearing. Thus, to the extent Birchfield is seeking to claim that the Government did not fulfill its obligations under the plea agreement, the claim is waived.

decision to be debatable or wrong.

## ORDER

**IT IS ORDERED that:**

1.      Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Dkt. 1, Crim Dkt. 44) is DENIED.

2.      No certificate of appealability shall issue. Petitioner is advised that he may still request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Local Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

3.      If Petitioner files a timely notice of appeal, and not until such time, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: October 27, 2022

B. Lynn Winmill
U.S. District Court Judge